UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KIMBERLY A. DYER,

                Dyer,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendants.

Case No. 3:16-cv-05733-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

        Kimberly A. Dyer brought this matter for judicial review of the Commissioner of Social Security's denial of her application for supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms the Commissioner's decision to deny benefits.

## FACTUAL AND PROCEDURAL HISTORY

        On January 22, 2013, Ms. Dyer filed an application for SSI benefits, alleging that she became disabled beginning January 1, 2000. Dkt. 9, Administrative Record (AR) 19. That application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ), at which Ms. Dyer appeared and testified, as did her husband and a vocational expert. AR 45-93.

        In a written decision dated December 1, 2014, the ALJ found that Ms. Dyer could perform her past relevant work, and in the alternative that she could perform other jobs existing

ORDER - 1

in significant numbers in the national economy, and therefore that she was not disabled. AR 19-39. Ms. Dyer's request for review was denied by the Appeals Council on June 16, 2016, making the ALJ's decision the final decision of the Commissioner. AR 1-4; 20 C.F.R. § 416.1481. Ms. Dyer then appealed that decision in a complaint filed with this Court on August 24, 2016. Dkt. 3; 20 C.F.R. § 416.1481.

Ms. Dyer seeks reversal of the ALJ's decision and remand for further administrative proceedings, arguing the ALJ erred:

(1) in evaluating the opinion evidence from Kimberly Wheeler, Ph.D., Phyllis Sanchez, Ph.D., Benjamin Aleshire, Ph.D., Craig Teveliet, M.D., Larry Harris, M.A., Jodi Taylor, M.A., and Casilda Jennings-Vigil, ARNP;

(2) in discounting Ms. Dyer's credibility;

(3) in considering her husband's lay testimony; and

(4) in assessing her residual functional capacity (RFC).

For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and therefore affirms the decision to deny benefits.

## DISCUSSION

This Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied "proper legal standards" in weighing the evidence and making the determination and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also*

*Batson*, 359 F.3d at 1193. "More than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

This Court will thus uphold the ALJ's findings "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. "If the evidence admits of more than one rational interpretation," the ALJ's interpretation must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). "Where there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I. <u>The ALJ's Evaluation of the Medical and Other Opinion Evidence</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). If the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

ORDER - 3

1  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

    A.    <u>Opinion Evidence from Acceptable Medical Sources</u>

Dr. Wheeler diagnosed Ms. Dyer in April 2014, with anxiety, post-traumatic stress disorder (PTSD), and major depression, and assessed a global assessment of functioning (GAF)

score of 50.[1] AR 331-35. As the ALJ noted, Dr. Wheeler "opined that [Ms. Dyer] had marked limitations in her ability to adapt to changes in a routine work setting, ask simple questions or request assistance, communicate and perform effectively in a work setting, and complete a normal workday and workweek without interruptions from psychologically-based symptoms," that she "was not capable of working at that time," and that her limitations would last an estimated nine months with available treatment. AR 33. Dr. Sanchez reviewed and agreed with these opinions. AR 328-30.

The ALJ gave "little weight" to the opinions of Dr. Wheeler and Dr. Sanchez, finding that the GAF scores and marked limitations

> are not consistent with the longitudinal treatment record, which showed that [Ms. Dyer] reported significant symptoms to Dr. Wheeler that are in stark contrast to the symptom she described to the psychiatric consultative evaluator [Dr. Benjamin Aleshire] just one year earlier. Further, there is no evidence that [Ms. Dyer's] complaints of mental health difficulties would persist for 12 months with appropriate treatment.

AR 33-34. The ALJ further observed that while "Dr. Wheeler assessed limitations far beyond those consistent with the longitudinal treatment record, even Dr. Wheeler noted that [Ms. Dyer's] limitations would not persist for more than nine months." AR 33. The ALJ rejected Dr. Sanchez's opinion for the same reasons. AR 34. Ms. Dyer asserts that the ALJ failed to adequately explain her rejection of Dr. Wheeler and Dr. Sanchez's opinions and that substantial evidence does not support the ALJ's conclusion. The Court disagrees.

---

[1] A global assessment of functioning ("GAF") score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." *Id.* (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); *see also England v. Astrue*, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life).

ORDER - 5

1    As the ALJ pointed out, even Dr. Wheeler noted Ms. Dyer's limitations would not persist

2    for more than nine months, AR 33, 334, and Dr. Sanchez concurred with Dr. Wheeler's findings.

3    AR 33-34; *see* 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it

4    must have lasted or must be expected to last for a continuous period of at least 12 months. We

5    call this the duration requirement."). Ms. Dyer challenges this finding, contending that this was

6    just an estimate on Dr. Wheeler's part, and that the low GAF scores evaluators assessed between

7    October 2013, and December 2014, show that her mental health limitations spanned more than

8    12 months. Dkt. 13, p. 8; *see* AR 323, 395.

9    Low GAF scores, however, do not by themselves necessarily require the ALJ to find a

10   claimant disabled. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir.2002) ("While

11   a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to

12   the RFC's accuracy."). Here, the ALJ offered specific and cogent reasons to give those scores

13   little weight. For example, the ALJ noted the scores were based largely on Ms. Dyer's subjective

14   reports, and as discussed below, the ALJ properly discounted her subjective complaints. *See* AR

15   34, 314-17, 345-47; *Morgan*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of

16   disability 'premised to a large extent upon the claimant's own accounts of his symptoms and

17   limitations' may be disregarded where those complaints have been 'properly discounted.'")

18   (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989)).

19   The ALJ also pointed out that objective findings in the record did not support the above

20   scores. Indeed, even those medical sources that assessed the low scores noted no significant

21   objective clinical findings. AR 314-16, 323-24, 345-47. The ALJ further pointed out that Ms.

22   Dyer did not follow through with treatment and that her reports were at least partly in response to

23   situational stressors, which indicates her mental health impairments are not as severe as the low

GAF scores would indicate. AR 34. For example, Mr. Harris recommended in October 2013, that Ms. Dyer undergo therapy two times per month for 180 days, but as of April 2014, she had not sought treatment. AR 323, 347. In addition, it does appear that situational stressors played a role in Ms. Dyer's mental health condition. AR 348, 350.

Finally, the ALJ noted and the record shows that Ms. Dyer's mental health complaints were inconsistent, which further makes the low GAF scores a questionable indicator of severe mental health problems. Thus, for example, while Ms. Dyer told Dr. Wheeler, Ms. Taylor, Mr. Harris, and Ms. Jennings-Vigil about her traumatic past and subjective symptoms, she did not tell Dr. Aleshire or even Dr. Teveliet, who was her primary care provider. AR 275-83, 336-37, 339. Accordingly, the ALJ did not err in rejecting the opinions of Dr. Wheeler on this basis.

B.   Opinion Evidence from Other Sources

Evidence from "other sources," including other "medical sources" such as nurse practitioners, may be used to "show the severity" of a claimant's impairments and their effect on the claimant's ability to work. 20 C.F.R. § 404.1513(d), § 416.913(d). However, because neither a nurse practitioner nor social worker is an "acceptable medical source" as that term is defined in the Social Security Regulations, an ALJ may give less weight to these sources' opinions than to those of acceptable medical sources. *See Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996) ("acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists); *see also* 20 C.F.R. § 404.1513(d), § 416.913(d). The testimony of such "other sources" may be discounted if the ALJ "gives reasons germane to each [source] for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted).

Ms. Dyer also contends that the ALJ failed to account for more recent treatment records that are consistent with Dr. Wheeler's and Dr. Sanchez's opinions. She points to findings from mental health professionals Ms. Taylor and Mr. Harris, and from Ms. Jennings-Vigil, a nurse

1  practitioner, each of whom observed numerous symptoms and assessed Ms. Dyer with low GAF

2  scores. AR 323, 353, 365.[2] Ms. Taylor and Mr. Harris diagnosed Ms. Dyer in October 2013 with

3  PTSD and assessed a GAF of 42. AR 323. However, they appear to have based these findings on

4  Ms. Dyer's self-reporting, as the mental status examinations they performed did not reveal any

5  marked symptoms. AR 314-16, 323-24, 345-47, 353-54.

6  Likewise, while Ms. Jennings-Vigil assessed a GAF score of 40 in August 2014, she also

7  appeared to base her conclusions largely on Ms. Dyer's self-reporting, although she did observe

8  some abnormal findings as well. AR 365. Given that as discussed above, the ALJ did not err in

9  discounting Ms. Dyer's credibility concerning her subjective complaints, the ALJ did not err in

10 also rejecting these GAF scores on this basis. As also discussed above, the ALJ gave other valid

11 reasons for according little weight to the findings of Mr. Harris, Ms. Taylor, and Ms. Jennings-

12 Vigil: lack of follow through with recommended treatment; inconsistency with the weight of the

13 objective evidence in the record; Ms. Dyer's lack of complaints about her mental health to her

14 treating provider; and Ms. Dyer's reporting symptoms in the "context of situational stressors."

15 AR 34; *see also* AR 84, 347. These are all germane reasons for according Ms. Taylor and Mr.

16 Harris's opinions only little weight, and substantial evidence supports them.

    C.    <u>Evidence of Physical Impairments</u>

Dr. Mark Heilbrunn conducted a physical examination in April 2013. He noted Ms. Dyer's history of diabetes mellitus and diagnosed her with cervical strain, right shoulder strain, morbid obesity, and bilateral conductive hearing loss. AR 298. He opined that Ms. Dyer had few

---

[2] Ms. Dyer also points to more recent evaluations from Nurse Jennings-Vigil that Ms. Dyer submitted to the Appeals Council. *See* AR 375, 395. Such records become part of the record that the Court reviews in determining if substantial evidence supports the ALJ's finding. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

limitations. AR 295, 299. The ALJ accorded "significant weight" to Dr. Heilbrunn's opinion, finding it to be consistent with his objective findings on examining Ms. Dyer. AR 32.

Dr. Roy Brown reviewed Ms. Dyer's medical record in July 2013, and noted that she had cervical and right shoulder strains, obesity, and diabetes. AR 112-13. He opined that she could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk for 6 hours per day, and sit for 6 hours per day. AR 115. He opined that her ability to push and pull was limited in her upper right extremities and that she had postural limitations. AR 115. The ALJ accorded "very significant weight to Dr. Brown's opinion," finding it to be "consistent with the longitudinal treatment record." AR 32.

Dr. Craig Teveliet examined Ms. Dyer in March 2014, when Ms. Dyer complained of having knee pain. AR 343. He diagnosed "[l]eft knee pain, probably secondary to degenerative joint disease." AR 337. He also ordered x-rays of Ms. Dyer's knee, which showed "1. Moderately advanced degenerative osteoarthritis of the left knee with a small knee effusion. 2. Incidental note of bipartite patella." AR 343. Dr. Teveliet gave no opinion about how long Dyer could stand or other limitations.

At the ALJ hearing, Ms. Dyer testified that she could only stand for 20-minute periods because of her knee pain. AR 62.

The ALJ found as part of Ms. Dyer's RFC that she is limited to "jobs that never require her to climb ladders, ropes, or scaffolds," but that can "involve occasional kneeling, crawling, and climbing of stairs." AR 23. She found that "[t]he overall evidence of record, including the objective medical evidence, does not indicate physical limitations beyond those accommodated in the [RFC]." AR 25. While she observed that Ms. Dyer testified about needing to take diabetes medicine and eat on a regular schedule, as well as difficulty standing because of her knee pain,

the ALJ observed that "objective findings in the longitudinal treatment record are largely unremarkable," and that Ms. Dyer testified to doing housework for most of the day. AR 25-26.

Ms. Dyer contends that the ALJ erred in according "very significant weight" to Dr. Brown's non-examining opinion because the doctor gave his opinion in July 2013, before Dr. Teveliet's x-ray findings and Ms. Dyer's hearing testimony that she could not stand for longer than 20 minutes. AR 62, 337, 343. She contends that Dr. Teveliet's assessment and the subsequent x-rays showed that her knee condition had worsened by March 2014, and the ALJ erred in failing to acknowledge this. Dkt. 13, p. 6.

Ms. Dyer does not explain how Dr. Teveliet's diagnoses or the x-rays he ordered contradict Dr. Brown and Dr. Heilbrunn's opinions, however. While that evidence indicated that Ms. Dyer has osteoarthritis in her knee, Ms. Dyer offers no medical opinions regarding how that would limit her work performance. Without any link between her condition and a functional limitation, the condition itself does not establish greater limitations than the ALJ found.[3] The ALJ also noted that although Dr. Teveliet told Ms. Dyer to return if she had persistent symptoms and that she continued to receive diabetes medicine, Ms. Dyer "did not report any continuing physical problems" either to Dr. Teveliet or in an April 2014 mental health assessment.[4] AR 27, 337, 348-49. The ALJ thus did not err in evaluating the medical evidence regarding Ms. Dyer's physical condition.

---

[3] The Court "must be careful not to succumb to the temptation to play doctor." Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990) (internal citations omitted).

[4] An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Social Security Ruling (SSR) 96-7p, available at 1996 WL 374186, at *7-8 (emphasis added). Ms. Dyer did not offer a reason for not seeking further treatment for her knee.

## II. The ALJ's Assessment of Ms. Dyer's Credibility

Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as substantial evidence supports that determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's active complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

Ms. Dyer contends that the reasons the ALJ gave for discounting Ms. Dyer's testimony are not specific, clear, and convincing. First, she asserts that "the ALJ could not reject her testimony about the extent or severity of her symptoms and limitations based solely upon whether objective evidence supports the degree of limitations [she] alleged." Dkt. 13, p. 11. It is true that an ALJ may

not discount a claimant's credibility solely on the basis of its inconsistency with the medical evidence in the record. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015). As discussed below, however, the ALJ did not discount Ms. Dyer's testimony solely on this basis.

The ALJ properly found Ms. Dyer's testimony to be inconsistent with the medical evidence regarding her physical impairments. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). For example, the ALJ noted: that Dr. Heilbrunn's objective evaluations did not show significant impairments; that Ms. Dyer told an evaluator in October 2013, that she was "basically healthy;" that she told Dr. Teveliet in December 2013, that she had no complaints apart from her diabetes; and that Dr. Teveliet's assessment showed her condition was unremarkable. AR 36-37, 318, 341. The ALJ noted as well that Mr. Harris asked Ms. Dyer about her physical problems in April 2014, at which time she did not mention her knee, and that while Dr. Teveliet told her to return if her symptoms persisted, she did not report continuing physical problems at her evaluations in the following months. AR 36-37, 348-49.

With respect to Ms. Dyer's mental health impairments, the ALJ did not simply summarize the medical record that supported her RFC finding. Rather, she juxtaposed Ms. Dyer's testimony with treatment records and medical opinions about her mental condition. AR 24-32. In particular, the ALJ noted that in meeting with Dr. Aleshire in April 2013, Ms. Dyer reported having symptoms of depression for 10 to 15 years, but that her mental status examination was mostly normal. AR 36. For example, she denied experiencing hallucinations, delusions, or symptoms of PTSD. AR 289-91.

The ALJ also found that the record showed Ms. Dyer could engage in household chores that

"are consistent with light work, and indicate that [she] would be able to perform the physical [RFC]" that the ALJ described. AR 36. Ms. Dyer testified, and earlier told Dr. Aleshire and Dr. Heilbrunn, that she does many household chores, including cleaning for most of the day. AR 36, 68-69 (sweeps floors and cleans bathrooms multiple times per day, cooks, lets cats in and out), 291, 295. Ms. Dyer told Dr. Aleshire and Dr. Heilbrunn that she walked the dog, went to the laundromat, vacuumed, cooked, washed dishes, cleaned, dusted, mopped, and performed light repairs. AR 291 ("Claimant stated that she struggles to have time to complete all of her tasks during the day and also take time for herself."), 295. If claimants can spend a substantial part of their day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit their allegations. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The record supports the ALJ's finding to that effect here. *See* AR 36, 291, 295. Moreover, Ms. Dyer's activities contrast with the activities the plaintiff performed in *Garrison v. Colvin*, a case Ms. Dyer relies on to argue the ALJ erred in relying on this basis for discounting her credibility. Dkt. 13, pp. 11-12; *see* 759 F.3d 995 (9th Cir. 2014).[5]

The ALJ also explained that inconsistencies in Ms. Dyer's testimony made it less persuasive: her inconsistent reporting. AR 28-32. This is also a valid explanation, and the record supports it. Ms. Dyer was inconsistent about her ability to work: whereas Ms. Dyer initially testified that she had no difficulty performing at her past jobs, she then testified that she often did not show up to her job as a stocker at Kmart early, or left early. AR 56-59, 64-65. Ms. Dyer also offered inconsistent descriptions of her difficulty performing that job: she initially testified that she quit because "they tried to put me on door greeter," a role in which she would have to be

---

[5] There, the Ninth Circuit found the claimant's activities consistent with her alleged disabilities: "the ability to talk on the phone, prepare meals once or twice a day, occasionally clean one's room, and, with significant assistance, care for one's daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day." *Id.* at 1016. The activities Ms. Dyer reports require much more movement, and she did not report a need for lengthy rest breaks.

ORDER - 13

around people. AR 55-56. She explained that when she was a stocker, "I wasn't really around anybody. They put me in an area, by myself." AR 57. But when the ALJ asked if she could be a stocker again, she said, "no[,] . . . [b]ecause I'd have to work with somebody else." AR 58.

III. The ALJ's Evaluation of William Dyer's Lay Testimony

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642

Ms. Dyer contends that the ALJ failed to account for her husband's testimony regarding her habits and social anxiety, which she asserts "confirm[ed] that [she] is more limited than she was found to be by the ALJ." Dkt. 13, p. 18.

Ms. Dyer is incorrect, as the ALJ's RFC finding reasonably accounted for the problems Mr. Dyer described. The ALJ discussed Mr. Dyer's testimony and concluded it did not "indicate limitations beyond those accommodated in the [RFC]." AR 35. She explained that Mr. Dyer "did not really describe limitations relating to anxiety other than that the claimant become[s] shaky and leaves public places." AR 35. The RFC finding addressed Ms. Dyer's trouble being in crowds by limiting her potential work to jobs that involve no contact with the public or crowds and only occasional contact with coworkers and superficial contact with supervisors. AR 23. Sleeping problems, which Mr. Dyer also described, could affect work performance at any exertion level, but nothing in the record indicates that Ms. Dyer's problems rose the level of

ORDER - 14

limiting her ability to work. *See* AR 83-84. Finally, the record contains no support for Mr. Dyer's assertion that anxiety exacerbated her diabetes or work exacerbated her anxiety.

IV. The ALJ's RFC Assessment

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found Ms. Dyer had the capacity

> **to perform less than the full range of light work as defined in 20 CFR 416.967(b) except: The claimant can perform jobs that never require her to climb ladders, ropes, or scaffolds. She can perform jobs that involve occasional kneeling, crawling, and climbing of stairs. The claimant can frequently stoop, balance, and crouch. She can occasionally push or pull using the right upper extremity and she can occasionally reach overhead with the right upper extremity. The claimant can perform jobs that allow her to avoid concentrated exposure to loud noise, hazards, and pulmonary irritants. In addition, the claimant can perform simple, routine tasks. She can perform jobs that involve no contact with the public or crowds. The claimant can perform jobs that involve occasional contact with coworkers**

1 **that does not require teamwork. She can perform jobs that involve superficial contact with supervisors. Further, the claimant can perform jobs that have no requirement to drive as part of the work tasks.**

AR 23 (emphasis in the original).

Ms. Dyer challenges the RFC as failing to include all the limitations included in the opinion of Dr. Wheeler and the testimony of Ms. Dyer and Mr. Dyer. She further challenges the ALJ's step four and five findings because the hypothetical the ALJ posed to the vocational expert did not include all those limitations. *See* AR 88-90. But because, as discussed above, the ALJ did not make the errors Ms. Dyer asserts in considering the medical evidence, her testimony, or the testimony of Mr. Dyer, the ALJ's RFC assessment completely and accurately describes her functional limitations. Accordingly, the ALJ did not err in her RFC assessment. And because Ms. Dyer bases her challenge to the ALJ's step four and five findings entirely on alleged errors in the RFC determination, the plaintiff fails to establish any error at steps four or five.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined Ms. Dyer to be not disabled. The Commissioner's decision to deny benefits therefore is AFFIRMED.

Dated this 6th day of June, 2017.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge